**BERNFIELD et al. v. WHITE'S ESTATE.**

No. 9650.

Court of Civil Appeals of Texas. San Antonio.

Nov. 27, 1935.

Rehearing Denied Jan. 8, 1936.

Myrick & Johnson, of Harlingen, for appellants.

Greenwood & Lewis, of Harlingen, for appellee.

SMITH, Justice.

This controversy had its inception when G. D. White gave a blanket deed of trust upon his two tracts of land, described as tracts 1 and 2, in Cameron county, to secure his debt to West Securities Company in the sum of $5,500.

On November 24, 1930, White and his wife, Martha J. White, sold tract 1 to F. W. Lake, who assumed the unpaid balance of the mortgage debt upon both tracts 1 and 2, and, as further consideration, gave a series of five promissory notes, secured by a vendor's lien on said tract 1. Notes 1 and 3 of the series, for $1,250 each, were made payable to Martha J. White, and notes 2, 4, and 5, for $856.60, $800, and $730, respectively, to the mortgagor, G. D. White. Subsequently, on February 4, 1931, White indorsed and transferred note 5 to J. W. Wade, and note 2 to Greenwood and Lewis, and retained the remaining note 4.

Lake defaulted in the payment of said five vendor's lien notes, whereupon the

several holders thereof joined in a suit, and on October 3, 1932, obtained judgment against Lake for the respective amounts of said notes, as well as for foreclosure of the vendor's lien upon said tract 1, which lien had been retained in the conveyance of said tract by White and wife to Lake. Lake appealed from said judgment, which was affirmed by this court. Lake v. White (Tex.Civ.App.) 63 S.W.(2d) 1090.

In consequence of said judgment, tract 1 was sold under execution, and bought in by said J. W. Wade, holder of note 5 of said series, who took and held title to same as trustee for himself and the holders of the remaining four notes, including the estate of G. D. White (payee of note 4), who had died in the meantime. The record does not show at what price Wade bid in said tract, or how that amount was applied.

Incidentally, the parties assert in their briefs, and base much of their arguments upon the assumption, that Lake was hopelessly insolvent and "fled the jurisdiction of the court" below. But, as these facts are not shown in the record, this court cannot consider them in disposing of the appeal.

Thereafter, on October 30, 1933, J. W. Wade, as administrator of the estate of G. D. White, deceased, upon a proper order of the probate court, sold and conveyed tract 2, and applied the net proceeds of the sale, $3,271.81, to the mortgage debt of $5,500 against both tracts, leaving a deficiency upon that debt.

Subsequently, on June 22, 1934, J. W. Wade and wife sold and conveyed tract 1, and applied the proceeds, first, to extinguishing the deficiency upon the mortgage debt, and, second, distributed the balance, proportionately, to the joint purchasers of tract 1 at said judicial sale. (While the record does not disclose in what capacity White made this sale, it may be assumed he made it as trustee for the several holders of the title conveyed to them at the judicial sale of said tract.)

Now, after the death of G. D. White, and in due course of the administration of his estate, Dr. Martin Bernfield, Thelma J. White, and Jane K. Patterson filed in the probate court, and the judge thereof allowed, their certain claims against said estate; but as there were no funds in the hands of the administrator with which to pay said allowed claims, or numerous other established claims, they went unpaid.

Later on, when the administrator filed his final account and request for discharge, showing the condition and disposition of the estate, including disbursement of the proceeds from the sales of tracts 1 and 2, Bernfield, White, and Patterson, owners of said allowed claims, objected to said final account, and contested the application for discharge. This contest was based, in effect, upon the contention that tract 1 should have been sold first, and the proceeds applied upon the mortgage debt upon both tracts, and the deficiency, if any, upon said debt, should have been satisfied out of tract 2, and the excess paid into the estate, and applied to said allowed claims; that tract 1 was the primary security for said mortgage debt, and tract 2, the secondary security, and that those securities should have been subjected to that debt in that order; that this was so by reason of Lake's assumption of the entire mortgage debt, as part of the consideration for tract 1.

The claimants' contest of the final report and discharge of the administration was denied by the probate court, the report was approved, the administrator discharged, and the estate ordered closed. The contestants appealed to the district court, and meeting a like defeat there, have appealed to this court.

■ Appellants present the one proposition of law that, under the facts of the case, "the court erred in rendering judgment discharging J. W. Wade, administrator, and approving his final report, but instead should have required the administrator, before paying anything to Martha J. White, J. W. Wade and Greenwood & Lewis, to have paid the debts of the estate." The proposition, as appellee points out, is quite too general to present a specific proposition of law with that certainty and definiteness required by prescribed rules, as well as by the rules of good practice. The result is that this court, if it considers appellants' brief, must search through the record, and the argument in the brief, in order to locate, identify, and segregate the specific contentions sought to be presented by appellants. By this process we gather that appellants' contentions revolve about the key proposition that when Lake, in his purchase of tract 1, assumed to pay the entire mortgage debt upon both tracts 1 and 2, tract

1 was thereby irrevocably dedicated as primary security for that debt, and that tract 2 could not be looked to, as security, until the security of tract 1 was exhausted. The proposition may be narrowed to the contention that, regardless of the sinuous course of the several transactions disclosed by the record, appellants, as subsequent general creditors of White, the mortgagor, acquired a vested interest · in the potential benefits inuring to White by reason of Lake's previous assumption to pay White's mortgage debt, as part of the consideration for tract 1; that by reason of that assumption White acquired the irrevocable right to have tract 1 first subjected to the mortgage debt before resort could be had upon tract 2 for that purpose, and that upon White's subsequent death, that right, being irrevocable, passed to White's estate, for the benefit of his general creditors, such as appellants; that as tract 2 was first exhausted, before resort to tract 1, the excess proceeds from the sale of the latter tract by its purchasers at the previous foreclosure sale, after the mortgage debt was paid, should have been paid into White's estate, and applied to appellants' allowed claims.

 The case may be simplified, for the time being, by disregarding the death of White and the fact that his estate is in course of administration; by keeping in mind the facts that the mortgagee never took any steps, by trustee's sale or suit, to force payment of the mortgage debt. Nor did the mortgagee ever take any cognizance of the several transactions concerning tract 1; he stood silently by, ignoring those transactions, and resting upon his lien upon both tracts, as security for his debt. When tract 2 was sold by White's administrator, the mortgagee accepted the net proceeds of that sale as part payment of his mortgage note, and when tract 1 was sold by those acquiring title under sheriff's deed, he accepted so much of the proceeds from that sale as were necessary to satisfy the balance owing upon the mortgage debt and lien. The final question here is: Should the balance of the proceeds of that sale of tract 1 have gone to the holders of the title to that tract under the sheriff's deed, or to the estate of White, who before his death had parted with his vendor's lien upon, and consequent superior title to, that tract, except as to the small interest represented by the vendor's lien note retained by him, and a proportionate share in the ownership of the tract?

When White gave the blanket deed of trust upon tracts 1 and 2, he did not part with, but retained, both the legal and the superior title to both tracts.

When White conveyed tract 1 to Lake, and reserved the vendor's lien to secure payment of Lake's five notes, Lake took the legal title, subject, first, to the mortgage lien, and, second, to the vendor's lien, but the superior title still remained in White, by virtue of the vendor's lien.

When Lake assumed to pay the mortgage debt upon both tracts 1 and 2, he thereby agreed, by legal implication, as between White and himself, that in event of the foreclosure of the blanket mortgage, tract 1, purchased by him, should be first sold, and the entire proceeds from the sale applied to the mortgage debt, before resort to tract 2. By virtue of this transaction, as between White and Lake, the latter became the principal obligor upon the mortgage debt, and the former his surety. But as the mortgagee neither noticed, accepted, nor acquiesced in this shift, it remained, simply, a purely personal undertaking by Lake to relieve White of his obligation to pay the mortgage debt. It had none of the elements of a covenant running with the land. Jones on Mortgages (7th Ed.) § 768a. And whatever right White had to require the exhaustion of the security of tract 1, in event of foreclosure of the paramount mortgage lien, before resort to tract 2, and whatever interest he theretofore had in tract 1, he yielded that right and interest when he indorsed and transferred the vendor's lien notes to Wade and Greenwood & Lewis, except the small interest represented in the one vendor's lien note retained by him.

The result of all these transactions was that White surrendered, and appellees acquired, both the legal and superior title to tract 1, as well as White's one-time right to require that tract 1 be first subjected to payment of the mortgage debt, and White was relegated to his original position of principal and only obligor upon the mortgage debt, and having alienated tract 1 and the right to enforce primary liability upon that tract, the owners of the latter could enforce the general rule that the portion of the land remaining in him (tract 2) be first subjected to payment of the mortgage debt.

This order of subjection was applied in this case, and the judgment is affirmed.